IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 3 0 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, NE
Washington, DC 20549
                      Plaintiff,

v.

DAVID M. HURLEY,

                      Defendant.

Civil No.

**COMPLAINT**

CASE NUMBER  1:05CV01306
JUDGE: James Robertson
DECK TYPE: General Civil
DATE STAMP: 06/30/2005

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against defendant David M. Hurley:

### NATURE OF ACTION

1.     This action involves defendant David M. Hurley's violations of the federal securities laws and Commission rules. Specifically, Hurley arranged four transactions in 2003 for his employer aaiPharma Inc., a pharmaceutical company headquartered in North Carolina, to falsely inflate the company's sales revenues.

2.     By his conduct detailed in this Complaint, Hurley violated Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 C.F.R. §§ 240.10b-5 and 240.13b2-1] and aided and abetted violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13].

3.  Accordingly, the Commission seeks a judgment: (1) permanently enjoining Hurley from further securities laws violations; (2) imposing a monetary penalty against Hurley; and (3) permanently barring Hurley from serving as an officer or director of any public company.

## JURISDICTION

4.  The Court has jurisdiction over this action under Exchange Act Sections 21(d), 21(e) and 27 [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

## DEFENDANT

5.  Defendant David M. Hurley, age 46, resides in Niwot, Colorado. Hurley served as Executive Vice President of aaiPharma and as president of aaiPharma's Pharmaceutical Division from on or about February 4, 2002 until on or about January 6, 2004. At that time, the company promoted Hurley to Chief Operating Officer, where he served until he resigned on or about February 13, 2004.

## RELEVANT ENTITY

6.  aaiPharma is a specialty pharmaceutical company that primarily markets branded pharmaceutical products that it either develops or acquires. Its common stock was, at all relevant times, a registered equity security under Exchange Act Section 12(g) [15 U.S.C. § 78l(g)] and traded on the Nasdaq National Market under the ticker symbol "AAII" until it was delisted on or about April 18, 2005 for failing to timely file its 2004 report on Form 10-K. On or about May 10, 2005, aaiPharma filed for protection under Chapter 11 of the U.S. Bankruptcy Code. aaiPharma's common stock currently trades on the Pink Sheets.

2

## FACTS

7. Near the end of the third quarter of fiscal year 2003, Hurley learned that aaiPharma's pharmaceutical product sales for the quarter were far short of the company's aggressive sales goals. Hurley then arranged a series of fraudulent transactions with third parties to create the illusion that aaiPharma had reached or exceeded those sales goals for the company's third quarter of 2003. In the fourth quarter of fiscal year 2003, Hurley arranged yet another fraudulent transaction to again present the appearance that aaiPharma had met its aggressive sales goals for the company's fourth quarter of 2003. Hurley also participated in earning conference calls with analysts where aaiPharma's officers repeated the fraudulent financial results reported for the third and fourth quarters and the fiscal year ended 2003.

### Hurley Arranges a Fraudulent Transaction in Calcitriol Which aaiPharma Books as a Final Sale

8. On or about September 29, 2003, just before the end of the company's third fiscal quarter, Hurley arranged a consignment sale of Calcitriol, a drug for chronic kidney dialysis patients with abnormally low levels of calcium in their blood, to a pharmaceutical distributor.

9. Although the sale was on consignment, Hurley directed aaiPharma employees to prepare a sales invoice falsely reflecting that the sale was final and payment was due within 60 days of the purchase order date.

10. As a consequence of Hurley's conduct, aaiPharma improperly recorded approximately $4.6 million in sales from the transaction in its books, records and financial statements for the third quarter of fiscal year 2003.

11. The company reflected the false revenue in its Form 10-Q quarterly report for the third quarter of 2003, filed with the Commission on or about November 14, 2003, and in a Form 8-K filed with the Commission on or about February 5, 2004, which announced the company's purported financial results for the fiscal year ended 2003.

12. The false sales of approximately $4.6 million constituted a material misstatement.

13. Hurley knew that the company was publicly reporting the approximately $4.6 million in false sales for the third quarter of fiscal year 2003.

### Hurley Arranges a Fraudulent Transaction in M.V.I. Which aaiPharma Books as a Final Sale

14. On or about September 29, 2003, Hurley arranged a second fraudulent transaction involving another nutritional drug known as M.V.I., this time to a different pharmaceutical distributor.

15. Specifically, Hurley arranged to have the distributor hold the product in the hope that aaiPharma could effect a legitimate sale within a few weeks. The legitimate sale never materialized and the product was eventually returned to aaiPharma.

16. Nonetheless, Hurley treated the temporary transfer of the drug to the distributor as a sale, resulting in aaiPharma's improper revenue recognition of approximately $3.7 million in false revenues from the transaction in its books, records and financial statements for the third quarter of fiscal year 2003.

17. aaiPharma reflected the false revenues in its Form 10-Q quarterly report for the third quarter of 2003, filed with the Commission on or about November 14, 2003, and in a Form 8-K filed with the Commission on or about February 5, 2004, which announced the company's purported financial results for the fiscal year ended 2003.

18. The false sales of approximately $3.7 million constituted a material misstatement.

19. Hurley knew that the company was publicly reporting the approximately $3.7 million in false sales for the third quarter of fiscal year 2003.

### Hurley Arranges a Fraudulent Transaction in Brethine Which aaiPharma Books as a Final Sale

20. On or about September 29, 2003, at about the same time as he effected the other two transactions described above, Hurley arranged a sale of Brethine (a drug that aids breathing in persons suffering from chronic lung disease) to a major pharmaceutical distributor with a right of return.

21. Even though the actual transaction was not final, Hurley caused aaiPharma to record the transaction as a final sale.

22. As a result of Hurley's conduct, aaiPharma reflected false sales of approximately $12.3 million from this transaction in its books, records and financial statements for its third quarter of fiscal year 2003.

23. aaiPharma reflected the false revenues in its Form 10-Q quarterly report for the third quarter of 2003, filed with the Commission on or about November 14, 2003, and in a Form 8-K filed with the Commission on or about February 5, 2004, which announced the company's purported financial results for the fiscal year ended 2003.

24. The false sales of approximately $12.3 million constituted a material misstatement.

25. Hurley knew that the company was publicly reporting the approximately $12.3 million in false sales for the third quarter of fiscal year 2003.

### Hurley Arranges a Second Fraudulent Transaction in Brethine Which aaiPharma Books as a Final Sale

26. In or around December 2003, Hurley arranged for yet another transaction with a major pharmaceutical distributor to purchase Brethine with a right of return.

27. Even though the actual transaction was not final, Hurley caused aaiPharma to record the transaction as a final sale.

28. As a result of Hurley's conduct, aaiPharma reflected false sales of approximately $8 million from this transaction in its books, records and financial statements for its fourth quarter of fiscal year 2003.

29. aaiPharma reflected the false revenues in a Form 8-K filed with the Commission on or about February 5, 2004, which announced the company's purported financial results for the fourth quarter and the fiscal year ended 2003.

30. The false sales of approximately $8 million constituted a material misstatement.

31. Hurley knew that the company was publicly reporting the approximately $8 million in false sales figures for the fourth quarter and the fiscal year ended 2003.

### Hurley Remains Silent While False and Misleading Statements Are Made During Earnings Conference Calls

32. On or about October 23, 2003 and on or about February 5, 2004, Hurley and other aaiPharma officers participated in analyst conference calls regarding the company's financial results for the third and fourth quarters and the fiscal year ended 2003.

33. The company's financial results discussed by aaiPharma officers during the earnings calls included the false sales for the four transactions described above.

34. Hurley failed to correct statements made by aaiPharma officers during the earnings calls that he knew were false and misleading.

### FIRST CLAIM – Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

35. The Commission incorporates the allegations in paragraphs 1-34 as though fully set forth in this paragraph.

36. Defendant Hurley, directly or indirectly, by use of means or instrumentalities of interstate commerce, and/or the mails, and/or facilities of a national securities exchange, in connection with the purchase or sale of securities: (a) employed devices, schemes, and/or artifices to defraud; and/or (b) made untrue statements of material fact and/or omitted to state material facts necessary to prevent other statements made from being misleading; and/or (c) engaged in acts, practices, or courses of business which operated as a fraud on any person, all in violation of Exchange Act Section 10(b) and Exchange Act Rule 10b-5.

37. Hurley therefore violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

### SECOND CLAIM – Violation of Exchange Act Section 13(b)(5) and Rule 13b2-1 Thereunder [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1]

38. The Commission incorporates the allegations in paragraphs 1-34 as though fully set forth in this paragraph.

39. Section 13(b)(5) of the Exchange Act prohibits any person from knowingly circumventing or knowingly failing to implement a system of internal accounting controls or knowingly falsifying any book, record, or account described in Section

13(b)(2) of the Exchange Act. Similarly, Rule 13b2-1 prohibits any person from, directly or indirectly, falsifying or causing to be falsified any book, record, or account subject to Section 13(b)(2)(A) of the Exchange Act.

40. By his conduct described above, Hurley violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1.

### THIRD CLAIM – Aiding and Abetting Violation of Exchange Act Section 13(a) and Rules 12b-20 and 13a-11 and 13a-13 Thereunder
### [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13]

41. The Commission incorporates the allegations in paragraphs 1-34 as though fully set forth in this paragraph.

42. Section 13(a) of the Exchange Act and Rules 13a-11 and 13a-13 thereunder require issuers to file current and quarterly periodic reports on prescribed forms. Implicit in this reporting requirement is that the reports be accurate.

43. Exchange Act Rule 12b-20 requires that periodic reports (including current and quarterly reports filed on Forms 8-K and 10-Q) contain all information necessary to ensure that the statements made therein are not materially misleading.

44. aaiPharma was required, at all relevant times, to file periodic reports, including current and quarterly reports.

45. aaiPharma violated Exchange Act Section 13(a) and Exchange Act Rules 12b-20, 13a-11 and 13a-13 when it filed its report for its fiscal third quarter for 2003 on Form 10-Q, and when it filed its Form 8-K filed on or about February 5, 2004, both of which contained material, fraudulent information overstating the company's revenues.

46. Section 20(e) of the Exchange Act imposes liability on any person who knowingly provides substantial assistance to another person in violation of the Exchange Act or any rule thereunder. Such a person is in violation to the same extent as the person to whom the assistance is provided.

47. As described above, Hurley knowingly provided substantial assistance to aaiPharma in violation of Exchange Act Section 13(a), and Rules 12b-20, 13a-11 and 13a-13 of the Exchange Act, and therefore aided and abetted aaiPharma's violations under Exchange Act Section 20(e).

### FOURTH CLAIM – Aiding and Abetting Violation of Exchange Act Section 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]

48. The Commission incorporates the allegations in paragraphs 1-34 as though fully set forth in this paragraph.

49. Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act requires issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer" and to maintain an adequate system of internal controls.

50. aaiPharma violated Exchange Act Section 13(b)(2)(A) and 13(b)(2)(B) because its books, records and accounts for its third and fourth quarters of fiscal year 2003 falsely overstated the company's revenues, and did not therefore fairly reflect aaiPharma's transactions. The company also failed to maintain an adequate system of internal controls to prevent such failures.

51. Section 20(e) of the Exchange Act imposes liability on any person who knowingly provides substantial assistance to another person in violation of the Exchange

Act or any rule thereunder. Such a person is in violation to the same extent as the person to whom the assistance is provided.

52.    As described above, Hurley knowingly provided substantial assistance to aaiPharma in its violation of Exchange Act Section 13(b)(2)(A) and 13(b)(2)(B), and therefore aided and abetted aaiPharma's violations under Exchange Act Section 20(e).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Commission respectfully requests that this Court enter a judgment:

A.    Permanently restraining and enjoining defendant David M. Hurley, his agents, servants, employees, representatives, attorneys, affiliates and all persons in active concert or participation with them who receive actual notice of the Court's permanent injunction, from:

1.    future violations of Section 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78(j)b and 78m(b)(5)], and Exchange Act Rules 10b-5 and 13b2-1 [17 C.F.R. §§ 240.10b-5 and 240.13b2-1]; and

2.    aiding and abetting violations of Exchange Act Section 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13];

B.    Imposing civil penalties against defendant Hurley under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], upon motion to be filed by the Commission;

C.  Barring Hurley from serving as an officer or director of any issuer which has securities registered under Section 12 of the Exchange Act or which is required to file reports under Section 15(d) of the Exchange Act; and

D.  Granting such other relief as this Court deems just and equitable.

Respectfully Submitted,

*[signature]*

Donald N. Dowie (Trial Counsel)
Paul R. Berger
Mark Kreitman
Robert B. Hanson
Janene M. Smith

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-4631
(202) 551-4471 (Tel: Dowie)
(202) 772-9245 (Fax: Dowie)
dowied@sec.gov

Dated: June 30, 2005